UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------x

NOREEN SHEA,

    Plaintiff,                                    COMPLAINT

v.

VILLAGE OF POMONA, BRETT YAGEL,

    Defendants.

-------------------------------------------------x

    By and through her counsel, Michael H. Sussman, Esq., plaintiff complains of defendants as follows:

## I. PARTIES and JURISDICTION

1. Plaintiff Noreen Shea is a United States citizen who currently resides outside of this judicial district.

2. During the events which form the bases for this action, plaintiff resided within this judicial district.

3. On or about November 3, 2017, within 300 days of her termination, plaintiff filed a Verified Complaint with the New York State Division of Human Rights alleging that she was terminated from her employment in violation of federal and state laws prohibiting discrimination on the basis of religion. See Exhibit 1.

1

4. After the NY State Division of Human Rights found probable cause that plaintiff suffered discrimination in violation of section 296 of the Executive Law of the State of New York, plaintiff sought and received [less than ninety days ago] a right to sue letter from the United States Department of Justice. See Exhibit 2.

5. Defendant Village of Pomona is situate in the County of Rockland, State of New York, within this judicial district.

6. Defendant Village of Pomona was the respondent named by plaintiff in her Verified Complaint as referenced in paragraph 3 above.

7. Defendant Brett Yagel is a non-Jew of legal age who resides within the Village of Pomona, County of Rockland, State of New York and, at all relevant times, has served as Mayor of the Village.

8. The acts and omissions attributed herein to defendant Yagel were all committed under color of state law, in his capacity as village Mayor.

9. As plaintiff alleges that defendant Village violated Title VII of the Civil Rights Act of 1964, as amended, and that Yagel violated the Equal Protection clause of the Fourteenth Amendment by terminating her employment on the basis of religion, this Honorable Court has jurisdiction over this matter pursuant to 42 U.S.C. section 2000e-5, *et. seq.* and 42 U.S.C. secs. 1983 and 1988 and 28 U.S.C. secs. 1331 and 1343 (3) & (4).

II. **FACTUAL ALLEGATIONS**

10. On or about February 1, 2016, plaintiff commenced employment with defendant village as a Deputy Village Clerk responsible for serving as secretary to the Building Inspector, Planning Board and Zoning Board of Appeals.

11. Plaintiff is a Christian.

12. Defendant Yagel appointed plaintiff, reappointed her in April 2016, but failed to re-appoint her in April 2017, causing her termination in June 2017.

13. On June 23, 2017, acting on behalf of defendant Village, defendant Yagel terminated plaintiff.

14. The Board of Trustees did not meet and consider plaintiff's termination or the non-renewal or her appointment.

15. The decision not to re-appoint plaintiff was made by, and only by, defendant Yagel and reflected his animus toward plaintiff on the basis of her friendly association with members of the Orthodox Jewish community.

16. In terminating plaintiff, defendant Yagel stated that he need not, and he did not, give her any reason.

17. During the last decade, an increasing number of Orthodox Jews have bought property/homes and settled in the Village of Pomona.

18. Preceding her termination, the Village of Pomona had been sued by Orthodox Jewish residents who claimed, in substance, that the Building Inspector and Mayor had engaged in blatant religiously-based discrimination against them.

19. These lawsuits were frequently discussed amongst the Village's small work force.

20. One such successful lawsuit brought in this court focused on the religiously-based animus defendant Yagel and the Village demonstrated toward the Rabbinical College of Tartikov when it sought to build a school to train rabbinical judges for Orthodox and Hasidic communities and faced numerous roadblocks erected by defendants, including the enactment of new zoning laws, to defeat their presence.

21. During the time plaintiff served as Deputy Village Clerk, many Orthodox Jews required building permits or certificates of occupancy or otherwise had reason to come to Village Hall requesting assistance.

22. Plaintiff assisted Orthodox Jewish residents as she did other Village residents.

23. Specifically, she sought to efficiently process requests for building permits, surveys, letters of "no violation" and Freedom of Information Act requests and did not routinely keep residents unduly waiting for responsive documents or information.

4

24. Plaintiff's service contravened the Mayor's directive that the Village delay the provision of services to Orthodox Jews until deadlines imposed by law.

25. Defendant Yagel and plaintiff's immediate supervisor, Frances Arsa-Artha [hereinafter "Arsa-Artha"], who served as Clerk/Treasurer for defendant Village, routinely confronted plaintiff and told her she needed to stop being so cooperative toward and with Orthodox Jewish residents.

26. Specifically, after plaintiff engaged in a friendly interaction with one Orthodox Jewish builder, defendant Yagel instructed plaintiff to stop having such interactions with "those types."

27. On another occasion, the Mayor advised plaintiff to buy pork rinds and place them on the counter for residents, knowing full well that this type of snack is an affront to Orthodox Jews.

28. When plaintiff ignored this latter suggestion and continued to positively interact with Orthodox Jews, several months before her termination, the Village Building Inspector, Louis Zummo, advised her that defendant Yagel was calling her a "Jew lover."

29. Zummo himself frequently impersonated Orthodox Jews in the Village Hall, mocking their speech and behavior.

30. In plaintiff's presence, such abusive behavior was joined in by others working from Village Hall, including Arsa-Artha and defendant Yagel.

5

31. Plaintiff's job performance was satisfactory and no job-related reason justified or informed her termination.

32. Plaintiff received no performance reviews nor any counseling memos.

33. Defendants never provided plaintiff any negative feedback concerning her job performance except as it pertained to her willingness to equally and promptly service the Orthodox Jewish community, as described above in paragraphs 22-24 and 26 above.

34. Plaintiff's immediate supervisor failed to provide her basic training.

35. On one occasion, plaintiff knew Arsa-Artha was leaving on vacation for two weeks and inquired how to prepare a death certificate if one was needed in her absence.

36. Arsa-Artha responded, "Don't worry. No one will die."

37. During her supervisor's vacation, two people did die and plaintiff was asked to provide death certificates.

38. After contacting another Village clerk and the County's Medical Examiner, plaintiff prepared a death certificate which the village later pretextually claimed had been improperly completed, informing [in part] her termination.

39. Plaintiff conversed with the Village Attorney about the lack of appropriate training.

6

40. The Village Attorney suggested that plaintiff share her concerns in writing with the Village Board and Mayor.

41. In February 2017, plaintiff wrote the Mayor and Board and expressed this concern.

42. The Mayor and Village Board received her letter but never addressed the concerns she raised or rectified the situation.

43. Contrary to the defendants' claim that plaintiff's termination was justified by performance-related issues, numerous persons with whom plaintiff dealt while she was employed as Deputy Clerk have attested to her efficiency, politeness and non-discriminatory treatment of residents.

44. Conversely, defendants never advised plaintiff that any resident had filed or provided any form of complaint concerning her job performance or the quality or nature of service she provided.

45. By dint of her termination, plaintiff has suffered economic and non-economic losses.

46. Specifically, plaintiff has not been able to find comparable employment and has experienced mental stress, embarrassment and anguish as a result of the defendants' treatment of her and those she tried to equally serve of the Jewish faith and of defendants' false and malicious efforts to cover up their discriminatory conduct.

### III. CAUSES OF ACTION

47. Plaintiff incorporates paras. 1-46 as if fully restated herein.

48. By and through the intentionally discriminatory conduct of defendant Yagel, defendant village violated plaintiff's rights by terminating her on the basis of her positive association with Orthodox Jews in violation of Title VII of the Civil Rights Act of 1964.

49. By terminating plaintiff because she equally served Orthodox Jews and other Village residents contrary to the animus against orthodox Jews which he harbors, defendant Yagel violated plaintiff's right to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution as made actionable by and through 42 U.S.C. section 1983.

WHEREFORE plaintiff prays that this Honorable Court [a] assume jurisdiction in this matter; [b] empanel a jury to hear and decide all issues within its jurisdiction; [c] award to plaintiff compensatory damages, including back and front pay and damages for emotional distress, pain and suffering and humiliation, as against defendants Village and Yagel jointly and severally; [d] award to plaintiff punitive damages against defendant Yagel; [e] award reasonable attorneys fees and costs pursuant to 42 U.S.C. section 1988 and (f) enter any other order as the interests of justice and equity require.

Dated:  November 29, 2018

                                Respectfully submitted,

                                Michael H. Sussman [3497]

SUSSMAN & ASSOCIATES  
PO BOX 1005  
GOSHEN, NY 10924  
(845)=294-3991  
(845)=294-1623 (FAX)  
Sussman1@frontiernet.net

# EXHIBIT 1

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

NOREEN SHEA,

                                Complainant,

v.

VILLAGE OF POMONA,

                                  Respondent.

VERIFIED COMPLAINT
Pursuant to Executive Law,
Article 15

Case No.
10190879

Federal Charge No. 16GB800346

---

    I, Noreen Shea, residing at 4 Chimney Corner Road, New Windsor, NY, 12553, charge the above named respondent, whose address is 100 Ladentown Road, Pomona, NY, 10970 with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of creed.

    Date most recent or continuing discrimination took place is 6/23/2017.

    The allegations are:

    1.    I am Non-Jewish. Because of this, I have been subject to unlawful discriminatory actions.

    2.    I began working for the above-named Respondent as Deputy Village Clerk, on February 1, 2016. To my knowledge, I performed my job in a satisfactory manner.

    3.    Upon information and belief, I was wrongfully terminated from my employment, on June 23, 2017 by Brett Yagel, the Mayor, who said he did not have to give me a reason. I was informed by Respondent's Building Inspector months prior however, that the Mayor calls me the "Jew Lover".

    4.    Upon information and belief, a large number of residents that live in the Village of Pomona are adherents of the Orthodox Jewish religion. I help them just the same as I would any person that enters the office for permits, surveys, and information on the Village. I can, by law, make them wait for their Freedom of Information Law (FOIL) request, surveys, and other documents, etc., but instead I try to serve the public in the most efficient and expeditious manner possible, which seemingly has cost me my employment with the Village.

    5.    Upon information and belief, on many occasions, I have been confronted by the Mayor and Frances Arsa-Artha, the Village Clerk/Treasurer, and told to stop being too cooperative with certain Jewish residents of the village. Specifically, one day, a well-known Orthodox Jewish

investor and builder in the village stopped in with his little daughter, who happened to be a redhead like myself. This builder was seeking information about one of his properties. A few days later, the Mayor gave me a lecture that centered around how I should handle any request from certain types of people. He then told me to stop saying how cute people's kids are and to have very little conversation with "those types."

6. Upon information and belief, although the Mayor was not present when I said to the well-known Orthodox Jewish investor and builder that his daughter was cute, evidently, Respondent's Village Clerk/Treasurer informed the Mayor of my nice, friendly conversation with him.

7. Upon information and belief, this well-known Orthodox Jewish investor and builder is like other Orthodox Jewish residents, investors, and/or builders who are delayed in receiving permits until the very last day of a thirty (30) day processing period that is allowed by law, and this directive to delay until the last day of that period, is as per Respondent's Mayor.

8. Upon information and belief, Respondent's Mayor advised me to "BUY PORK RINDS" and place them on the counter for residents, intentionally knowing that this type of snack food is an affront against the majority of the growing Orthodox Jewish population.

9. Upon information and belief, there have been countless behind the door communications between Respondent's Mayor and Village Clerk/Treasurer relating to my personal, friendly, and open communications with village residents, which evidences the Mayor's interest and standard practice, to not equally and effectively service Orthodox Jewish residents.

10. Upon information and belief, it is common knowledge, amongst Village employees who have seen and heard the "Us vs. Them" operating model, that Respondent's Mayor demands this of us.

11. I believe Respondent terminated my employment because I provided competent, equal, and professional services to Orthodox Jewish investors, builders, and residents in contravention to Respondent's desired practice that I stop being too cooperative with certain Jewish residents of the village.

Based on the foregoing, I charge respondent with an unlawful discriminatory practice relating to employment because of creed, in violation of the New York State Human Rights Law (Executive Law, Article 15), Section 296.

I also charge the above-named respondent with violating Title VII of the Civil Rights Act of 1964, as amended (covers race, color, creed, national origin, sex relating to employment). I hereby authorize SDHR to accept this verified complaint on behalf of the U.S. Equal Employment Opportunity Commission (EEOC) subject to the statutory limitations contained in the aforementioned law(s).

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

Noreen Shea
4 Chimney Corner Road
New Windsor, NY 12553

EEOC Charge Number: 16GB800346
NYSDHR Case Number: 10190879

### NOTICE

This office has been informed that you filed a complaint of employment discrimination with the New York State Division of Human Rights (NYSDHR). The purpose of this notice is to inform you of your federal rights pursuant to one or more of the statutes under which you may have filed. Please be advised that your complaint will be investigated by the New York State Division of Human Rights, not the Federal Equal Employment Opportunity Commission (EEOC). All questions, correspondence and status reports with regard to your case must be directed to the New York State Division of Human Rights office where your complaint was filed.

**YOUR FEDERAL RIGHTS** (if you filed under):

[X] Title VII of the Civil Rights Act of 1964, as amended -- If you want to file a _private_ lawsuit in federal district court with your _own private attorney_ because you _do not_ want the New York State Division of Human Rights to conduct an investigation, you may request from the EEOC a _Notice of Right to Sue, 180 days after you have filed your complaint._ Once the EEOC grants your request, it is only valid for ninety (90) days from the date the Notice was issued, after which your time to sue expires. If you want the New York State Division of Human Rights to conduct an investigation, you do not need to make this request, or to contact or write either agency. The New York State Division of Human Rights will contact you and/or advise you in the near future of their investigation and determination findings.

[ ] The Americans with Disabilities Act of 1990 (ADA) -- Same as Title VII, above.

[ ] The Age Discrimination in Employment Act of 1967, as amended (ADEA) -- If you want to file a _private_ lawsuit with your _own private attorney_, you could do so any time after 60 days from the date you filed your complaint with the New York State Division of Human Rights. This is only if you do not want the New York State Division of Human Rights to conduct an investigation, otherwise you do not need to do anything at this time. The New York State Division of Human Rights will contact you and/or advise you in the near future of their investigation and determination findings.

Date: November 9, 2017

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

## EEOC REVIEW PROCEDURE

If you want the EEOC to review the New York State Division of Human Rights final determination, because you are not satisfied with their final findings, you may request that the EEOC conduct a substantial weight review. This request must be done in writing to the EEOC and within fifteen (15) days from the date you received the New York State Division of Human Rights final determination. Otherwise, we will adopt the state findings.

You review request must specify the reason(s) why you do not agree with the New York State Division of Human Rights final determination.

Mail your request for substantial weight review to:

Equal Employment Opportunity Commission
Attn: State and Local Unit
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

This address is for review purposes only. Remember, if you have questions concerning the status of your case, you must contact the New York State Division of Human Rights.

Date: November 9, 2017

# EXHIBIT 2

EEOC Form 161 (11/16)   **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Noreen Shea
4 Chimney Corner Road
New Windsor, NY 12553

From: New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2018-00346 | Holly M. Shabazz, State & Local Program Manager | (212) 336-3643 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other (briefly state)   Charging Party wishes to pursue matter in Federal District Court.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

On behalf of the Commission

*[signature]*

Kevin J. Berry,
District Director

October 3, 2018
*(Date Mailed)*

Enclosures(s)

cc:   **Attn: Director of Human Resources
VILLAGE OF POMONA
100 Ladentown Road
Pomona, NY 10970**

# FACTS ABOUT FILING
# AN EMPLOYMENT DISCRIMINATION SUIT
# IN FEDERAL COURT IN NEW YORK STATE

You have received a document which is the final determination or other final action of the Commission. This ends our handling of your charge. The Commission's action is effective upon receipt. Now, you must decide whether you want to file a private lawsuit in court. This fact sheet answers several commonly asked questions about filing a lawsuit.

## WHERE SHOULD I FILE MY LAWSUIT?

Federal District Courts have strict rules concerning where you may file a suit. You may file a lawsuit against the respondent (employer, union, or employment agency) named in your charge. The appropriate court is the district court which covers either the county where the respondent is located or the county where the alleged act of discrimination occurred. However you should contact the court directly if you have questions where to file your lawsuit. New York State has four federal districts:

- The United States District Court for the Southern District of New York is located at 500 Pearl Street in Manhattan. It covers the counties of Bronx, Dutchess, New York (Manhattan), Orange, Putnam, Rockland, Sullivan, and Westchester. (212) 805-0136 http://www.nysd.uscourts.gov

- The United States District Court for the Eastern District of New York is located at 225 Cadman Plaza in Brooklyn and covers the counties of Kings (Brooklyn), Nassau, Queens, Richmond (Staten Island), and Suffolk. (718) 613-2600 http://www.nyed.uscourts.gov

- The United States District Court for the Western District of New York is located at 68 Court Street in Buffalo. It covers the counties of Allegheny, Cattaraugus, Chautauqua, Chemung, Erie, Genesee, Livingston, Monroe, Niagara, Ontario, Orleans, Schuyler, Seneca, Steuben, Wayne, Wyoming, and Yates. (716) 551-4211 http://www.nywd.uscourts.gov
332-1700

- The United States District Court for the Northern District of New York is located at 100 South Clinton Street in Syracuse and covers the counties of Albany, Broome, Cayuga, Chanango, Clinton, Columbia, Cortland, Delaware, Essex, Franklin, Fulton, Greene, Hamilton, Herkimer, Jefferson, Lewis, Madison, Montgomery, Oneida, Onandaga, Oswego, Ostego, Rensselaer, St. Lawrence, Saratoga, Schenectady, Schoharie, Tioga, Tompkins, Ulster, Warren, and Washington. This District Court's *Pro Se* Attorney has offices at 10 Broad Street in Utica New York. (315) 234-8500 http://www.nynd.uscourts.gov

## WHEN MUST I FILE MY LAWSUIT?

Your private lawsuit must be filed in U.S. District Court within 90 days of the date you receive the enclosed EEOC Notice of Right To Sue. Otherwise, you will have lost your right to sue.

(Over)