

# BLEAKLEY PLATT

NEW YORK — CONNECTICUT
Joseph DeGiuseppe, Jr.
914.287.6144
jdegiuseppe@bpslaw.com

**BLEAKLEY PLATT & SCHMIDT, LLP**

ONE NORTH LEXINGTON AVENUE
WHITE PLAINS, NEW YORK 10601
914.949.2700
FAX: 914.683.6956
BPSLAW.COM

November 21, 2019

*VIA ECF AND EMAIL*
Hon. Cathy Seibel, U.S.D.J.
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601

      Re:    ***DEFENDANTS' PROPOSED QUESTIONS FOR***
             ***THE DECEMBER 11, 2019 COURT CONFERENCE***
             <u>***Shea v. Village of Pomona, et al.***</u>**, Civ. No. 18-CV-11170-CS**

Dear Judge Seibel:

      Please be advised that my firm represents defendants Village of Pomona and former Mayor Brett Yagel in the above-entitled action. Attached collectively as Schedule A is a set of the Defendants' conflict of interest questions for each of the following person(s):

1. Trustee Robert Klein
2. Defendant Brett Yagel;
3. Mayor Ian Banks; and
4. Trustees Carol McFarlane; Ilan Fuchs; and Mendy Lasker.

      I hereby certify that a copy of this letter and Schedule A have also been served via email on Plaintiff's counsel, Michael Sussman, Esq.

                                   Very truly yours,

                                   Joseph DeGiuseppe, Jr.

cc: Michael Sussman, Esq.(w/enc.)(via email)

# SCHEDULE A
## DEFENDANTS' PROPOSED QUESTIONS

**Trustee Robert Klein**

1. Please confirm for the Record the effective date on which you became a Trustee of the Village of Pomona.

2. Did you know the Plaintiff Noreen Shea prior to becoming a Trustee? If yes, please explain. When did you first meet Ms. Shea?

3. Have you ever discussed or had any other communications with Ms. Shea concerning any aspect of this lawsuit? If yes, please explain.

4. Have you ever discussed or had any other communications with Michael Sussman, Esq. concerning any aspect of this lawsuit? If yes, please explain.

5. Have you provided any assistance or other services to either Ms. Shea, Mr. Sussman or anyone else concerning Ms. Shea's claims or testimony in this action? If yes, please explain

6. Are you currently, or have you ever been represented by Mr. Sussman in any other lawsuit? If yes, please explain.

7. If you answered yes to the foregoing question, were any of these lawsuits against the Village of Pomona and/or Mayor Brett Yagel? If yes, please explain.

8. Are your parents currently represented by Mr. Sussman in any other lawsuit or appeal? If yes, please explain.

9. Have your parents ever been represented by Mr. Sussman in any other action, proceeding or an appeal therefrom involving the Village of Pomona? If yes, please explain and provide status.

10. Was Ms. Shea the Deputy Village Clerk when you first became a Village Trustee? For how long did she hold that position after you became a Village Trustee?

11. Did you ever supervise the work of Ms. Shea for the Village of Pomona? If yes, please explain.

12. Did you ever observe Ms. Shea performing her duties as Deputy Village Clerk for the Village of Pomona at the Village Hall or elsewhere? If yes, please explain.

13. Have you ever read Ms. Shea's February 2017 memo to the Board of Trustees about workplace problems she was experiencing? If yes, do you recall if she made any

complaints in that memo concerning alleged anti-Semitic conduct against Mr. Yagel or any other person?

14. While you were a Village Trustee, did you have any discussions or other communications with Ms. Shea concerning any complaints which she had against Mr. Yagel including any complaints relating to alleged anti-Semitic comments or conduct? If yes, please explain.

15. I have been advised by defense counsel that a document produced by Plaintiff's counsel in this action contain a list of various audio recordings including one dated 2/1/17 which has the following notation: "This recording should be used In Robert Klein's Case." Do you have any idea as to what this notation is referring to?

16. Did Ms. Shea or any other person ever provide you with a copy of any audio recordings made by Ms. Shea related to her claims in this or any other action or proceeding? If yes, please explain.

17. Have you ever personally heard Mr. Yagel use any anti-Semitic comments during his tenure as Village Mayor? If yes, please explain.

18. Can you offer any sworn testimony in this action based on your own personal knowledge or observations as to any conduct or comments by Mr. Yagel which could be considered anti-Semitic in any respect?

19. Is it true that your sole knowledge of Mr. Yagel's alleged anti-Semitic comments or conduct is based on your discussions or other communications with Ms. Shea?

20. Have you had any discussions or other communications with Mr. Sussman or anyone else concerning Mr. Yagel's alleged anti-Semitic comments or conduct which are the subject of Ms. Shea's claims in this lawsuit?

21. Prior to Ms. Betty Van der Beek being appointed as Deputy Village Clerk in June 2017, did Mayor Ian Banks ever tell you that Ms. Shea had complained to him of anti-Semitic comments or conduct by Mr. Yagel in her presence?

22. Prior to Ms. Betty Van der Beek being appointed as Deputy Village Clerk in June 2017, did any other Village Trustee tell you that Ms. Shea had complained to him/her of anti-Semitic comments or conduct by Mr. Yagel in her presence?

23. Did you know beforehand that Mayor Yagel was going to appoint Ms. Betty Van der as Deputy Village Clerk in June 2017? Please explain.

24. Do you have any objections or concerns about the Village and defendant Brett Yagel being represented by the same law firm, either Bleakley Platt or another law firm, in this lawsuit? If yes, please explain.

**Defendant Brett Yagel**

1. Please confirm for the Record the dates on which you were Mayor of the Village of Pomona.

2. Who was Ms. Shea's immediate supervisor as the Deputy Village Clerk while you were Mayor?

3. Did any of the Village Trustees (other than yourself) have any supervisory authority over Ms. Shea in performing her duties as Deputy Village Clerk for the Village of Pomona? If yes, please explain.

4. After he was elected as a Village Trustee in March 2017, did Trustee Robert Klein ever tell you that Ms. Shea had complained to him about any anti-Semitic comments or conduct you had allegedly made in her presence?

5. Prior to Ms. Shea not being reappointed as Deputy Village Clerk, had any other Village Trustee told you that Ms. Shea had complained to him/her of any anti-Semitic comments or conduct you had allegedly made in her presence? Please explain.

6. When was the first time that you heard of Ms. Shea's allegations that you had not re-appointed her based on an anti-Semitic statement which you had allegedly made?

7. Did you confer with any of the Village Trustees in deciding not to reappoint Ms. Shea as Deputy Village Clerk? If yes, please explain.

8. Do you have any objections or concerns about the Village and yourself being represented by the same law firm, namely Bleakley Platt, in this lawsuit? If yes, please explain.

**Mayor Ian Banks**

1. Please confirm for the Record the effective date on which you became Mayor of the Village of Pomona? (Confirm that he is now also an *ex officio* Village Trustee).

2. Did you know the Plaintiff Noreen Shea prior to becoming Mayor? How did you first meet Ms. Shea?

3. Did you offer Ms. Shea the position of Deputy Village Clerk after you were elected Mayor? If yes, did she accept?

4. Prior to that date on which you became Mayor, did you serve as a Trustee of the Village of Pomona? What was the effective date on which you first became a Village Trustee?

5. Was Ms. Shea the Deputy Village Clerk when you first became a Village Trustee? For how long did she hold that position after you became a Village Trustee?

6. Did you ever supervise the work of Ms. Shea for the Village of Pomona?

7. Did you ever observe Ms. Shea performing her duties as Deputy Village Clerk for the Village of Pomona at the Village Hall or elsewhere? If yes, please explain.

8. When you were a Village Trustee in 2017, did Ms. Shea ever report to you any complaints which she had with Mr. Mayor Yagel? If yes, please explain.

9. Prior to Ms. Shea not being reappointed as Deputy Village Clerk in June 2017, did Trustee Robert Klein ever tell you that Ms. Shea had complained to him of anti-Semitic comments or conduct by Mr. Yagel in her presence?

10. Prior to Ms. Shea not being reappointed as Deputy Village Clerk in June 2017, did any other Village Trustee tell you that Ms. Shea had complained to him/her of anti-Semitic comments or conduct by Mr. Yagel in her presence?

11. Did you know beforehand that Mayor Yagel was not going to reappoint Ms. Shea as Deputy Village Clerk? If yes, please explain.

12. Prior to the commencement of this lawsuit, did you have any discussions with Mr. Yagel as to the reasons why he did not re-appoint Ms. Shea as Deputy Village Clerk? If yes, please explain.

13. Prior to becoming Mayor, did you ever speak with Ms. Shea about this lawsuit? If yes, please explain.

14. Prior to becoming Mayor, did you ever speak with Mr. Sussman about this lawsuit? If yes, please explain.

15. Have you ever personally heard Mr. Yagel make any comments or taken any actions which you would consider as being anti-Semitic against Orthodox Jews in any respect? If yes, please explain.

16. Do you have any objections or concerns about the Village and defendant Brett Yagel being represented by the same law firm, namely Bleakley Platt, in this lawsuit? If yes, please explain.

**Trustees Mordechai (Mendy) Lasker; Ilan Fuchs and Carol MacFarlane**

1. Please confirm for the Record the effective date on which you became a Trustee of the Village of Pomona.

2. Did you know the Plaintiff Noreen Shea prior to becoming a Trustee? Have you ever met Ms. Shea? If yes, please explain.

3. Have you ever discussed or had any other communications with Ms. Shea concerning any aspect of this lawsuit? If yes, please explain.

4. Have you ever discussed or had any other communications with Michael Sussman, Esq. concerning any aspect of this lawsuit? If yes, please explain.

5. Have you ever discussed or had any other communications with Robert Klein concerning any aspect of this lawsuit? If yes, please explain.

6. Have you ever discussed or had any other communications with any other Trustee of the Mayor concerning any aspect of this lawsuit? If yes, please explain.

7. Have you provided any assistance or other services to either Ms. Shea, Mr. Sussman or Mr. Robert Klein or anyone else concerning Ms. Shea's claims or testimony in this action? If yes, please explain.

8. Have you ever accessed the Village's computer network, files on the network, security cameras, servers, or email host systems of either current or former elected officials? If yes, please explain.

9. Have you ever discussed with Trustee Robert Klein or any other elected official of the Village of Pomona the Noreen Shea case? If yes, please explain.

10. Have you ever discussed the Noreen Shea case with any individual outside of the current Village Board members or Village Counsel? If yes, please explain.

11. Have you ever met Ms. Noreen Shea? If yes, please explain.

12. Did you ever attempt to interject yourself in Village matters regarding the services of a Village contracted employee in any matter regarding Robert Klein, and/or Robert Klein's parents? If yes, please explain.

13. Did you ever observe Ms. Shea performing her duties as Deputy Village Clerk for the Village of Pomona at the Village Hall or elsewhere? If yes, please explain.

14. While you were a private citizen, did you ever have any discussions or other communications with Ms. Shea concerning any complaints which she had against former Mayor Yagel, including any complaints relating to alleged anti-Semitic comments or conduct? If yes, please explain.

15. Did Ms. Shea or any other Village official or any other individual ever provide you with a copy of any audio recordings that Ms. Shea created o disseminated to others? If yes, please explain.

16. Have you ever personally heard Mr. Yagel use any anti-Semitic comments during his tenure as Village Mayor? If yes, please explain.

17. Have you ever personally told Mr. Yagel that you heard or had had audio recordings where he allegedly used any anti-Semitic comments during his tenure as Village Mayor? If yes, please explain.

18. Can you offer any sworn testimony in this action based on your own personal knowledge or observations as to any conduct or comments by Mr. Yagel which could be considered anti-Semitic in any respect?

19. Is it true that your sole knowledge of Mr. Yagel's alleged anti-Semitic comments or conduct is based on your discussions or other communications with Ms. Shea or other persons? If other persons, please identify them.

20. Have you had any discussions or other communications with Mr. Sussman or anyone else from his law firm concerning Mr. Yagel's alleged anti-Semitic comments or conduct which are the subject of Ms. Shea's claims in this lawsuit?

21. Have you had any discussions or other communications with Mr. Sussman or anyone else concerning Mr. Yagel's alleged anti-Semitic comments or conduct which are the subject of Ms. Shea's claims in this lawsuit? If yes, please explain.

22. Prior to Ms. Betty Vanderbeek being appointed as Deputy Village Clerk in June 2017, did Mayor Ian Banks or anyone else ever tell you that Ms. Shea had complained to him of anti-Semitic comments or conduct by Mr. Yagel in her presence?

23. Prior to Ms. Betty Vanderbeek being appointed as Deputy Village Clerk in June 2017, did any other Village Trustee tell you that Ms. Shea had complained to him/her of anti-Semitic comments or conduct by Mr. Yagel in her presence?

24. Did you know beforehand that Mayor Yagel was not going to reappoint Ms. Shea as Deputy Village Clerk? If yes, please explain.

25. Do you have any objections or concerns about the Village and defendant Brett Yagel being represented by the same law firm, namely Bleakley Platt, in this lawsuit? If yes, please explain.