UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
.................................................................x

NOREEN SHEA,

                                    Plaintiff,

               -against-

VILLAGE OF POMONA, BRETT YAGEL,                            Civ. No.:  18-CV-11170 (CS)

                                    Defendants.

.................................................................x

## **DEFENDANT BRETT YAGEL'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

**<u>TABLE OF CONTENTS</u>**

<u>**PAGE**</u>

Preliminary Statement…………………………………………………………………..1

Statement Of Facts…………………………………………………………………...1

      I.      Background Of Plaintiff's Employment…………………………………………..1

      II.    Plaintiff's Testimony Regarding The Second-Hand Basis For Her Opinion That Defendant Yagel Harbored Alleged Discriminatory Sentiments…………………2

      III.   Defendant Yagel's Decision Not To Re-Appoint Plaintiff………………………2

      IV.   Procedural Background…………………………………………………………3

Summary Of Argument…………………………………………………………………3

Argument…………………………………………………………………………5

              Point I          Summary Judgment Must Be Granted To Defendant Because Plaintiff Has Not Asserted A Cognizable Claim For Relief Under The Equal Protection Clause Of The Fourteenth Amendment………………………………………………………...5

              Point II        Plaintiff Cannot Establish A Prima Facie Association-Discrimination Claim……………………………………………8

              Point III      Defendant Yagel Is Entitled To Qualified Immunity………………9

              Point IV      Plaintiff Is Not Entitled To Punitive Damages As A Matter Of Law…………………………………………………………….

Conclusion………………………………………………………………………………11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

African Trade & Info. Ctr., Inc. v. Abromaitis,
   294 F.3d 355 (2d Cir. 2002)...................................................................................6

Anderson v. Creighton,
   483 U.S. 635 (1987)............................................................................................10

Bd. of Dir. Rotary Int'l v. Rotary Club of Duarte,
   481 U.S. 537 (1987)..............................................................................................7

Best Payphones, Inc. v. Dobrin,
   410 F. Supp. 3d 457 (E.D.N.Y. 2018) ...................................................................7

Caldarola v. Calabrese,
   298 F.3d 156 (2d Cir. 2002).................................................................................10

Danahy v. Buscaglia,
   134 F.3d 1185 (2d Cir. 1998)...............................................................................10

Doe v. Zucker,
   No. 1:17-CV-1005, 2018 U.S. Dist. LEXIS 121216 (N.D.N.Y. July 20, 2018) ..................7, 8

Engquist v. Or. Dep't of Agric.,
   553 U.S. 591 (2008) .............................................................................................6

Gentile v. Nulty,
   769 F. Supp. 2d 573 (S.D.N.Y. 2011)...................................................................6

Gierlinger v. New York State Police,
   15 F.3d 32 (2d Cir. 1994)......................................................................................6

Harlow v. Fitzgerald,
   457 U.S. 800 (1982)............................................................................................10

Hogan v. Lewis Cty.,
   No. 7:16-CV-1325 (LEK/ATB), 2018 U.S. Dist. LEXIS 167064 (N.D.N.Y.
   Sept. 28, 2018) ....................................................................................................11

Ivani Contr. Corp. v. City of New York,
   103 F.3d 257 (2d Cir. 1997).................................................................................11

Patterson v. County of Oneida,
   375 F.3d 206 (2d Cir.2004)....................................................................................5

Roberts v. U.S. Jaycees,
    468 U.S. 609 (1984)...................................................................................7

Robison v. Via,
    821 F.2d 913 (2d Cir. 1987)....................................................................10

Saucier v. Katz,
    533 U.S. 194 (2001)...................................................................................9

Saulpaugh v. Monroe Cmty. Hosp.,
    4 F.3d 134 (2d Cir. 1993)..........................................................................6

Tabachnik v. Jewish Theol. Seminary of Am.,
    No. 03 Civ. 2759 (HB), 2004 U.S Dist. LEXIS 3405 (S.D.N.Y. Mar. 2, 2004) ......................9

Velez v. Levy,
    401 F.3d 75 (2d Cir.2005)..........................................................................5

Wilson v. New York,
    No. 15 Civ. 23 (CBA) (VMS), 2017 U.S. Dist. LEXIS 10492 (E.D.N.Y. Jan.
    24, 2017) ....................................................................................................6

Zarda v. Altitude Express, Inc.,
    883 F.3d 100 (2d Cir. 2018)......................................................................9

**Statutes**

42 U.S.C. section 1983 ...................................................................................... *passim*

ADA..........................................................................................................................8, 9

Civil Rights Act of 1964 Title VII....................................................................... *passim*

**Other Authorities**

First Amendment ...................................................................................................4, 7, 8

U.S. Constitution....................................................................................................5, 7, 10

United States Constitution Fourteenth Amendment ............................................ *passim*

## PRELIMINARY STATEMENT

Defendant, Brett Yagel (referred to hereinafter as "Defendant" or "Defendant Yagel"), respectfully submits this Memorandum Of Law In Support Of His Motion For Summary Judgment.  Plaintiff asserts a claim under 42 U.S.C. section 1983 against Defendant Yagel alleging that he violated her rights under the Fourteenth Amendment to the United States Constitution (Saccomano Aff. Ex. A).[1]  As set forth below, the record evidence overwhelmingly undermines Plaintiff's claim against Defendant Yagel.  As such, Defendant Yagel is entitled to summary judgment as a matter of law.

## STATEMENT OF FACTS

### I.  Background Of Plaintiff's Employment.

Plaintiff began her employment with the Village of Pomona ("Defendant Village") on February 1, 2016. (Saccomano Aff. Ex. B, at 16 ¶¶ 30:2-4).  Plaintiff was hired in the position of Deputy Village Clerk.  Id.  Plaintiff was interviewed by Defendant Yagel; (Saccomano Aff. Ex. B, at 7 ¶¶ 12:17-19); and received her employment offer directly from Defendant Yagel. (Saccomano Aff. Ex. B, at 7-8 ¶¶ 16:2-3).  Plaintiff received training from Defendant Village's Building Inspector and understood that the Building Inspector worked a part time schedule. (Saccomano Aff. Ex. B, at 13 ¶¶ 24:18-20).  Specifically, Plaintiff received training directly from the Building Inspector regarding the building permit application process.  (Saccomano Aff. Ex. B, at 18 ¶¶ 34:14-18). Defendant Yagel advised Plaintiff that she had a certain timeframe, defined by law, within which to schedule building inspections.  (Saccomano Aff. Ex. B, at 25 ¶¶ 50: 12-18). Defendant Yagel did not ever explain to Plaintiff why he wanted building inspections to be scheduled within the timeframe permitted by law.  Id

---

[1] Citations to the "Saccomano Aff. Ex. __" refers to the supporting Affirmation of Joseph A. Saccomano, Jr., Esq.

II.     **Plaintiff's Testimony Regarding The Second-Hand Basis For Her Opinion That Defendant Yagel Harbored Alleged Discriminatory Sentiments**.

Plaintiff's opinion that Defendant Yagel's alleged disapproval of Plaintiff's scheduling of building permit inspections was based entirely on statements made by Defendant Village's Building Inspector. Compare (Saccomano Aff. Ex. B, at 25: 12-18) with (Saccomano Aff. Ex. B, at 27 ¶¶ 51:24-25, ¶¶ 52:2-8). Indeed, Plaintiff testified that Defendant Yagel never told her not to schedule a building inspection for someone because they were Jewish. (Saccomano Aff. Ex. B, at 29 ¶¶ 54:15-24). Moreover, Plaintiff testified that it was Defendant Village's Building Inspector, not Defendant Yagel, who impersonated persons of the Jewish faith. (Saccomano Aff. Ex. B, at 28 ¶¶ 53:11-21). Defendant Yagel testified that, when he learned about the Building Inspector's comments, he disciplined the Building Inspector immediately and told him that such comments were inappropriate. (Saccomano Aff. Ex. C, at 75 ¶¶ 2-12). Further, the Building Inspector testified that he never heard Defendant Yagel refer to Plaintiff as a "Jew Lover," and that he never stated to Plaintiff that Defendant Yagel had described her as "Jew Lover." (Saccomano Aff. Ex. D, at 186 ¶¶ 7-25).

III.    **Defendant Yagel's Decision Not To Re-Appoint Plaintiff**.

Defendant Yagel directed Plaintiff to schedule building permit inspections in accordance with governing law. (Saccomano Aff. Ex. B, at 25 ¶¶ 50: 12-18). Defendant Yagel testified that the Building Inspector complained about Plaintiff's scheduling of appointments. Specifically, that Plaintiff scheduled appointments and "ma[de] commitments to the residents" without first checking with the Building Inspector to ensure he was available on the date and time scheduled. (Saccomano Aff. Ex. C, at 212 ¶¶ 19-25).

Defendant Yagel further testified that he observed Plaintiff responding to Freedom of Information Law ("FOIL") requests without following the proper procedures and governing

laws regarding such responses.  (Saccomano Aff. Ex. C, at 199 ¶¶ 7-25, 200 ¶¶ 2-5).  Defendant

Yagel questioned whether Plaintiff had executed a thorough and complete search for all files

responsive to the FOIL request, to which Plaintiff responded that she "didn't need to."

(Saccomano Aff. Ex. C, at 200 ¶¶ 15-20).  Defendant Yagel expressed his concern to Plaintiff that

she was responding to FOIL requests without doing her "due diligence" in accordance with the

duties of her position.  (Saccomano Aff. Ex. C, at 200 ¶¶ 23-25, 201 ¶¶ 2-25, 202 ¶ 2).  Defendant

Yagel testified that he informed Plaintiff on June 23, 2017, that he would be "bringing forth another

candidate to fill her position." (Saccomano Aff. Ex. C, at 164 ¶¶ 14-19).

**IV.**      <u>**Procedural Background**</u>.

On or about November 3, 2017, Plaintiff filed a Verified Complaint with the New

York State Division of Human Rights (the "Administrative Complaint") against The Village of

Pomona.  (Saccomano Aff. Ex. A at 1 ¶ 3).  Plaintiff's Administrative Complaint alleged violations

of Title VII of the Civil Rights Act of 1964, and Section 296 of the New York State Human Rights

Law.  (Saccomano Aff. Ex. A, at 12 ¶ 11).  The material allegations set forth in Plaintiff's

Administrative Complaint, which were asserted only against The Village of Pomona, are the same

as those which form the basis of Plaintiff's Complaint.  <u>Compare</u> (Saccomano Aff. Ex. A, at 3-7)

<u>with</u> (Saccomano Aff. Ex. A. at 11-12).  Plaintiff filed the instant Complaint on November 30,

2018.  (Saccomano Aff. Ex. A).

<u>**SUMMARY OF ARGUMENT**</u>

Plaintiff asserts a Title VII association-discrimination claim only against Defendant

Village.  Based on the same allegations, Plaintiff asserts a claim against Defendant Yagel under

the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, as

made actionable by 42 U.S.C. § 1983  (hereinafter referred to as Plaintiff's "Constitutional Claim"

3

or Plaintiff's "Section 1983 Claim").  Only Plaintiff's Section 1983 Claim is relevant to this motion.

It is well established that a Plaintiff can only assert Section 1983 Claims alongside Title VII claims if the Section 1983 Claim alleges a separate and independent violation of Plaintiff's constitutional rights.  Defendant Yagel is entitled to summary judgment as a matter of law with respect to Plaintiff's Constitutional Claim for several reasons.

First, Plaintiff's Constitutional Claim is not separate and independent from her Title VII claim asserted against Defendant Village. Indeed, Plaintiff neither alleges any additional or separate facts in support of her Constitutional Claim, nor a cognizable claim for relief under the Equal Protection Clause.  Rather, Plaintiff has alleged a "claim" that does not exist under the Fourteenth Amendment and is attempting to disguise a First Amendment intimate association retaliation claim as an Equal Protection Clause claim.  The type of association that is the crux of Plaintiff's allegations would not even establish a *prima facie* association-discrimination claim under the standards applicable to Title VII, and it is certainly not the type of association afforded constitutional protection.

Second, even if Plaintiff's Constitutional Claim *were* cognizable—which Defendant Yagel denies—Plaintiff's allegations do not establish a *prima facie* association-discrimination claim. As amply demonstrated in the record and Plaintiff's Complaint, Plaintiff has only alleged that Defendant Yagel instructed her to schedule building permit inspections and respond to FOIL requests in accordance with the law. Her allegations regarding Defendant Yagel's purported unlawful discriminatory animus are conclusory and insufficient to support a claim for association-discrimination even under the lower standard applicable to Title VII claims, which is not available to Plaintiff with respect to Defendant Yagel.

4

Third, even if Plaintiff's were able to establish a cognizable, *prima facie* claim, Defendant Yagel is entitled to qualified immunity as a matter of law.  Defendant Yagel's actions with respect to Plaintiff were limited to instructing her to follow the laws and regulations applicable to her official duties as Deputy Village Clerk.  For the reasons described above, Defendant Yagel's decision to terminate her at will employment did not violate any constitutionally protected right of Plaintiff.  Similarly, Defendant Yagel's conduct certainly did not violate any clearly defined right of Plaintiff under the U.S. Constitution.  Accordingly, Defendant Yagel is entitled to qualified immunity and Plaintiff's claims against him must be dismissed as a matter of law.

Finally, it is well established that punitive damages cannot be awarded against a public sector official for actions taken in their official capacity.  Plaintiff alleges that all acts taken by Yagel were in his official capacity.  There is no claim asserted in the Complaint against him in his individual capacity.  Plaintiff's opportunity to amend her Complaint has long since expired.  Therefore, Plaintiff's claim for punitive damages against Defendant Yagel must be dismissed as a matter of law.

## ARGUMENT

**POINT I**    **SUMMARY JUDGMENT MUST BE GRANTED TO DEFENDANT BECAUSE PLAINTIFF HAS NOT ASSERTED A COGNIZABLE CLAIM FOR RELIEF UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT.**

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state ... law." Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005) (citation omitted). "Section 1983 is not itself a source of substantive rights . . . . [i]t merely provides a method for vindicating federal rights elsewhere conferred . . . ." Patterson v. County of Oneida,

375 F.3d 206, 225 (2d Cir. 2004) (internal citation and quotation marks omitted).  Plaintiff cannot

state a viable claim for perceived religious association discrimination as a matter of law because

no such right exists.  Therefore, Plaintiff's Complaint must be dismissed in its entirety against

Defendant Yagel.

Moreover, it is well established that "[a] Title VII Plaintiff is not precluded from

bringing a concurrent § 1983 cause of action, so long as the § 1983 claim is based on a distinct

violation of a constitutional right."  Gierlinger v. New York State Police, 15 F.3d 32, 34 (2d Cir.

1994); Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 143 (2d Cir. 1993).  A plaintiff may bring

an equal protection claim under a "class of one" or selective enforcement theory.  Both theories

require a plaintiff to prove that she was treated differently from others similarly situated.  Wilson

v. New York, No. 15 Civ. 23 (CBA)_(VMS), 2017 U.S. Dist. LEXIS 10492, at *60-*65 (E.D.N.Y.

Jan. 24, 2017); African Trade & Info. Ctr., Inc. v. Abromaitis, 294 F.3d 355, 363 (2d Cir. 2002),

adopted by, Wilson v. New York, No. 15-CV-23 (CBA) (VMS), 2018 U.S. Dist. LEXIS 49609

(E.D.N.Y. Mar. 26, 2018).

The "class of one" equal protection doctrine "provides that a successful equal

protection claim can be brought by a 'class of one,' 'where the Plaintiff alleges that she has been

intentionally treated differently from others similarly situation and that there is no rational basis

for the difference in treatment."  Gentile v. Nulty, 769 F. Supp. 2d 573, 578 (S.D.N.Y. 2011).

However, in Engquist v. Or. Dep't of Agric., the Supreme Court "conclude[ed] that the class-of-

one theory of equal protection has no application in the public employment context. . . ." 553 U.S.

591, 607 (2008).  The Supreme Court recognized that its conclusion was "guided, as in the past,

by the common-sense realization that government offices could not function if every employment

decision became a constitutional matter."  Id.  The Engquist decision has been extended to

6

similarly bar selective enforcement claims against public employers. See Best Payphones, Inc. v. Dobrin, 410 F. Supp. 3d 457, 535 (E.D.N.Y. 2018), adopted by, 410 F. Supp. 3d 457 (E.D.N.Y. 2019). Therefore, Plaintiff's equal protection claim cannot be premised on either a "class of one" or selective prosecution theory.  Plaintiff has not and cannot allege that she was subjected to unlawful discrimination because of her membership in a protected class.  Plaintiff has alleged the opposite -- that she is not a member of the protected class against which she accuses Defendant Yagel of harboring an unlawful discriminatory animus.  (Saccomano Aff. Ex. A at 3, ¶ 11)

It appears that Plaintiff is attempting to disguise a First Amendment Claim based on a violation of Plaintiff's right to intimate association as a violation of her rights under the Equal Protection Clause.  Plaintiff also cannot alleged a cognizable intimate association claim.

"The U.S. Constitution affords protection to two distinct types of association: 'intimate association' and "expressive association.'"  Doe v. Zucker, No. 1:17-CV-1005 (GTS/CFH), 2018 U.S. Dist. LEXIS 121216, at *43 (N.D.N.Y. July 20, 2018).  The U.S. Supreme Court has defined "intimate associations" as "those relationships that may be classified as familial in nature, as involving 'deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs, but also distinctly personal aspects of one's life.'" Id. (quoting Roberts v. U.S. Jaycees, 468 U.S. 609, 620 (1984)).  The Supreme Court has not "'defined the precise boundaries' as to what qualifies as a 'highly personal relationship entitled to constitutional protections.'"  Id. at *44 (quoting Bd. of Dir. Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 545 (1987).  The Supreme Court, however "has noted that 'determining the limits of state authority over an individual's freedom to enter into a particular association . . . unavoidably entails a careful assessment of where the relationship's

objective characteristics locate it on a spectrum from the most intimate to the most attenuated of personal attachments.'" Id. (quoting Roberts, 468 U.S. at 620).

        Plaintiff seeks to disguise her First Amendment intimate association claim as an Equal Protection Claim because her alleged "association" with unspecified members of a subset of the Village of Pomona's populace is exactly the type of "most attenuated" relationships that the Supreme Court has declined to afford Constitutional Protection. Therefore, Plaintiff has not alleged a cognizable Equal Protection Clause Claim, or intimate association claim, and her Constitutional Claim asserted against Defendant Yagel must be dismissed as a matter of law.

**POINT II**    **PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE ASSOCIATION-DISCRIMINATION CLAIM**.

        Even if Plaintiff's Section 1983 Claim were cognizable—which Defendant Yagel denies—it still must be dismissed as a matter of law because Plaintiff has not and cannot establish a *prima facie* association-discrimination claim against Defendant Yagel.

        Indeed, even under the less-stringent standards applicable to association-discrimination claims under Title VII, Plaintiff still cannot establish a *prima facie* claim against Defendant Yagel.[2] To establish a *prima facie* association discrimination claim, a plaintiff must show (1) that she was qualified for the job at the time of the adverse employment action; (2) that she was subjected to an adverse employment active; (3) that she was known by her employer at the time to have a relative or an associate who was a member of a protected category; and (4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. See

---

[2] Note that Defendant Yagel makes the arguments herein for *illustrative purposes only*. The standards discussed herein apply to Title VII and the ADA, not the Constitutional Claims alleged by Plaintiff. Defendant Yagel makes the arguments herein merely to demonstrate that he would *still* be entitled to summary judgment even if Plaintiff were able to allege a cognizable association-discrimination claim against him, which she is not as a matter of law.

Tabachnik v. Jewish Theol. Seminary of Am., No. 03 Civ. 2759 (HB), 2004 U.S Dist. LEXIS 3405, at *14 (S.D.N.Y. Mar. 2, 2004) (discussing the *prima facie* standard for association discrimination claims asserted under the ADA); see also Zarda v. Altitude Express, Inc., 883 F.3d 100, 132 (2d Cir. 2018) (recognizing association discrimination claims asserted under Title VII).

Plaintiff has not alleged sufficient facts to establish a *prima facie* association-discrimination claim against Defendant Yagel even if such a claim could be asserted against him. First, Plaintiff's significant and repeated failures to follow her supervisor's directives and conduct her official duties in accordance with governing law establish that she was not qualified for the Deputy Village Clerk position. Assuming—for purposes of the present motion *only*—that Plaintiff could establish the second and third elements of her hypothetical *prima facie* claim against Defendant Yagel, Plaintiff has not and cannot establish the fourth element of her claim. Indeed, the record evidence plainly establishes that Defendant Yagel never made any comments regarding Plaintiff's alleged affiliation with persons of the Jewish faith. Plaintiff alleges that the Village Building Inspector informed her of comments being made by Defendant Yagel, but the sworn testimony of the Building Inspector directly contradicts Plaintiff's allegations, wherein he testified that Defendant Yagel did not call Plaintiff a "Jew Lover. Indeed, Plaintiff has not alleged any material facts which would support her conclusory allegation that Defendant Yagel's decision not to re-appoint her was in any way related to her association or interactions with the Village's Jewish residents. Accordingly, even if Plaintiff *were* able to assert an association discrimination claim against Defendant Yagel, her allegations would not establish a *prima facie* claim. Therefore, Defendant Yagel is entitled to summary judgment as a matter of law.

**POINT III**   **DEFENDANT YAGEL IS ENTITLED TO QUALIFIED IMMUNITY**.

"Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001) (internal quotations omitted). "The qualified

immunity defense shields government employees performing discretionary functions from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002), aff'd, 343 F.3d 570 (2d Cir. 2003).

A right is considered to be "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Danahy v. Buscaglia, 134 F.3d 1185, 1190 (2d Cir. 1998). However, "even if the contours of the plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, the defendant may enjoy qualified immunity if it was *objectively reasonable* for him to believe that his acts did not violate those rights." Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987) (emphasis added). See also Danahy, 134 F.3d at 1190.

For the reasons described above, Plaintiff has not and cannot establish that Defendant Yagel's conduct violated any right protected by the U.S. Constitution under either the Equal Protection Clause of the Fourteenth Amendment, or the First Amendment's protection of an individual's right to intimate association. Since Plaintiff cannot even establish that Defendant Yagel has violated Plaintiff's federal or Constitutional rights, Plaintiff certainly cannot establish that Defendant Yagel violated any *clearly established* statutory of Constitutional rights of Plaintiff. Therefore, Defendant Yagel is entitled to qualified immunity and Plaintiff's claims against him must be dismissed as a matter of law.

**POINT IV**   **PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES AS A MATTER OF LAW**.

It is well established that a plaintiff cannot recover punitive damages against a public official sued in his official capacity.  See Ivani Contr. Corp. v. City of New York, 103 F.3d 257, 262 (2d Cir. 1997) (recognizing that public officials sued "in their *official* capacity only . . . enjoy the same immunity from punitive damages as [a municipality].") (emphasis in original); Hogan v. Lewis Cty., No. 7:16-CV-1325 (LEK/ATB), 2018 U.S. Dist. LEXIS 167064, at *70 (N.D.N.Y. Sept. 28, 2018) ("[P]unitive damages are not recoverable against governmental officials sued in their official capacities.").

Plaintiff admits that her claim against Defendant Yagel is based on alleged actions taken in his official capacity as Mayor of the Village of Pomona. See, e.g., (Saccomano Aff. Ex. A, at 3 ¶ 13) ("On June 23, 2017, acting on behalf of defendant Village, defendant Yagel terminated plaintiff."). Accordingly, Plaintiff is barred from asserting a claim for punitive damages against Defendant Yagel and her claim must be denied as a matter of law

## CONCLUSION

The undisputed evidence clearly establishes that Plaintiff has failed to allege a cognizable Constitutional Claim against Defendant Yagel.  Plaintiff's claim for association discrimination does not satisfy any standard for any recognized Equal Protection Claim or rise to the level of a constitutionally protected intimate association.  In addition, even if Plaintiff *were* able to assert an association-discrimination claim against Defendant Yagel under the standard applicable to Title VII claims—which she cannot do, as a matter of law—the record evidence discussed above clearly shows that Plaintiff could not establish such a *prima facie* claim against him.  Further, Defendant Yagel is entitled to qualified immunity because his conduct did not violate any statutory or constitutionally protected right of Plaintiff—much less any *clearly*

11

*delineated* right.  Finally, Plaintiff admits that her claims against Defendant Yagel arise out of alleged conduct taken in his official capacity as Mayor of the Village of Pomona.  Therefore, Defendant Yagel is immune to Plaintiff's claim for punitive damages.  There is no material issue of fact to be tried by a jury.  Defendant Yagel is entitled to summary judgment as a matter of law.

<div style="margin-left:40%;">

Respectfully submitted,

JACKSON LEWIS P.C.

By: _____

Joseph A. Saccomano, Jr.
John T. Cigno

ATTORNEYS FOR DEFENDANT YAGEL

</div>

Dated: May 8, 2020
        White Plains, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

NOREEN SHEA,

                                    Plaintiff,

            -against-                                       Civ. No.:  18-CV-11170 (CS)

VILLAGE OF POMONA, BRETT YAGEL,

                                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


## CERTIFICATE OF SERVICE

            The undersigned hereby certifies that a true and correct copy of Defendant Brett

Yagel's Memorandum of Law In Support Of His Motion For Summary Judgment has been served

via ECF and First Class Regular Mail on May 8, 2020 on counsel of record at the address listed

below:

|                                   |                                              |
|-----------------------------------|----------------------------------------------|
| Michael H. Sussman                | Kenneth Ethan Pitcoff                        |
| Sussman & Associates              | Morris Duffy Alonso & Faley                  |
| P.O. Box 1005                     | 2 Rector Street                              |
| Goshen, NY 10924                  | New York, NY 10006                           |
| *Attorneys for Plaintiff*         | *Attorneys for Defendant Village of Pomona*  |


_____

Joseph A. Saccomano, Jr.