UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
NOREEN SHEA,                                    Index No.: 18-cv-11170 (CS)

                        *Plaintiffs,*

   -against-

VILAGE OF POMONA and BRETT YAGEL,
individually and in his official capacity,

                        *Defendants.*
-------------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF THE VILLAGE OF POMONA'S MOTION FOR SUMMARY JUDGMENT


**MORRIS DUFFY ALONSO & FALEY**
*Attorneys for Defendants*
**VILLAGE OF POMONA and BRETT YAGEL**
101 Greenwich Street, 22nd Floor
New York, New York  10306
Tel.:  (212) 766-1888
Fax.:  (212) 766-3052
Our File No.: (TRV) 70101


*Of Counsel*
    **Kenneth E. Pitcoff**
    **Jonathan A. Tand**

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** ………………………………………………………………… i

**TABLE OF AUTHORITIES** ………………………………………………………… i - iv

**PRELIMINARY STATEMENT** …………………………………………………………… 1

**STATEMENT OF FACTS** ………………………………………………………………….. 1

**ARGUMENT** ……………………………………………………………………………… 4

    I.    **PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THE DECISION TO NOT REAPPOINT THE PLAINTIFF TO HER POSITION DUE TO LEGITIMATE BUSINESS REASONS RELATING TO HER JOB PERFORMANCE AND PLAINTIFF FAILS TO ESTABLISH THAT THE REASONS PROVIDED WERE A MERE PRETEXT TO DISCRIMINATION.**

    ………………………………………………………………………………… 4

    A.  The Village Had Legitimate Non-Discriminatory Reasons For Not Reappointing Plaintiff To The Deputy Village Clerk Position

    …...……………………………………………………………………………. 7

    B.  Plaintiff's Alleged Proof Of Discrimination Consists Entirely Of Rank Speculation And Inadmissible Hearsay And Is Insufficient To Establish As A Matter Of Law That The Reasons Given For Not Reappointing Her To Her Position Were A Mere Pretext For Discrimination
………………………………………………………………………………… 8

**CONCLUSION** …………………………………………………………………………….. 11

# TABLE OF AUTHORITIES

**CITATIONS**

*Federal Court Rulings*

**Abdu-Brisson v. Delta Air Lines, 239 F.3d 456**

    **(2d Cir.) 534 U.S. 993 (2001)** …………………………………………… 6

**Burlington Coat Factory Warehouse Corp. v. Espirit de Corp.,**

    **769 F.2d 919 (2d Cir. 1985)** ………………………………………….. 10

**Byrnie v. Town of Cromwell, Bd. of Edu., 243 F.3d 93**

    **(2d Cir. 2001)** ……………………………………………………… 6

**Carter v. County of Suffolk, 2013 WL, 6224283,**

    **\*3 (E.D.N.Y.)(Bianco, J.)** ………………………………………… 5

**Gallo v. Prudential Residential Servs., Ltd. P'ship.,**

    **22 F.3d 1219, (2d Cir. 1994)** ……………………………………… 5

**Gibbs v. Consol. Edison Co. of N.Y., Inc.**

    **714 F. Supp. 85 (S.D.N.Y. 1989)** ……………………………………. 5

**Girma v. Skidmore College, 180 F. Supp. 2d 326**

    **2001 U.S. Dist. LEXIS 18191** ………………………………………….. 6

**Hayut v. State Univ. of N.Y., 352 F.3d 733**

    **2d Cir. 2003)** …………………………………………………………. 7

**Little v. Republic Refining Co., 924 F2d 95**

    **(5th Cir. 1991)** …………………………………………………… 9

**Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133,**

    **120 S. Ct. 2097, 147 L. Ed. 2d 105 (2005)** ………………………….. 7

**Schnabel v. Abramson, 232 F.3d 83 (2d Cir. 2000)** ……………………….. 7

**Scotto v. Almenas, 143 F.3d 105, (2d Cir. 1998)** ..............………………6

**Stern v. Trs of Columbia Univ. in City of N.Y., 131 F.3d 305**

**(2d Cir. 1997)** ……………………………………………………………………... 6

**Wado v. Xerox Corp., 991 F.Supp. 174, (W.D.N.Y. 1998)** ………………......

    **aff'd, 196 F.3d 358 (2d Cir. 1999)** ……………………………………….. 9

**Woroski v. Nashua Corp., 31 F.3d 105**

    **(2d Cir. 1994)** ………………………………………………………………..  10

**Ying Jing Gan v. City of New York, 996 F.2d 522**

    **(2d Cir. 1993)** ………………………………………………………………... 6


*Federal Rules of Civil Procedure*

    **Fed R.Civ P.56 Wright v. Goord, (2d Cir. 2009)** ………………………………….. 1

        **Fed R.Civ P. 56(c)** ……………………………………………….. 3, 11

    **Federal Rules of Evidence**

        **803 and 804** ……………………………………………………………..  10


*United States District Court Rulings*

    **Anderson v. Liberty Lobby, Inc., 477 U.S. 242,**

        **106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)** ………………………………….. 5

        **Id at 249, 250** ……………………………………………………………… 5

        **Liberty Lobby, 477 U.S. at 256** ………………………………………… 6

    **Cambell v. Home Depot U.S.A., Inc., 2006 U.S. Dist. LEXIS**

        **14958, *7-8, 2006 WL 839001** ………………………………………….. 7

    **Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548**

        **91 L. Ed. 2d 265 (1986)** ……………………………………………………5

    **Ellenbogen v. Projection Video Svcs., Inc., 2001**

        **U.S. Dist. LEXIS 8852, *17**

        **(S.D.N.Y. June 29, 2001)** ……………………………………………….. 6

    **Matsushita Elec. Indus. V. Zenith Radio Corp.,**

        **475 U.S. 574 (1986)** ……………………………………………………… 6

**St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502**

  **113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)** …………………………………… 7


*State Laws and Other Authorities*

 **14th Amendment of the United States Constitution**

  **42 U.S.C. § 1983** ………………………………………………………………… 4

 **McDonnell Douglas Corp. v. Green, 411 U.S. 792,**

  **802, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973)** ………………………………. 5

  **411 U.S. at 804** ………………………………………………………….... 5

 **534 U.S. 993 (2001)** …………………………………………………………… 6

**PRELIMINARY STATEMENT**

Plaintiff Noreen Shea was Deputy Village Clerk for the Village of Pomona from February 2016 to June 23, 2017 at which point her contract was not renewed by the Village's former mayor Brett Yagel. Plaintiff alleges that she was not retained because she assisted the Village's Jewish residents in contravention of directives allegedly made by Mayor Yagel.  As will be discussed in detail below, the Village had a legitimate business reason for not reappointing the Plaintiff to her position and Plaintiff's allegations of discrimination consists entirely of speculation and inadmissible hearsay.   Accordingly, the Village is entitled to summary judgment pursuant to Fed. R. Civ. P. 56.

**STATEMENT OF FACTS**

Plaintiff was hired by Defendants Village of Pomona in 2016 as a Deputy Village Clerk. (Ex. "C"15: 10-18).  The person who hired Plaintiff was Defendant Brett Yagel.(Ex "C" 16: 2-3) Plaintiff was initially hired to complete the term of Carol LaChianna and was then subsequently appointed to her own term.  (Ex "C" 32:15-25,  33: 2-19).  Plaintiff's job duties included assisting her two direct supervisors, Village Clerk Fran Arsa Artha, and Building Inspector Louis Zummo. In April of 2016, Plaintiff was appointed to a one-year term as Deputy Clerk that came due in April 17, 2017  (Ex "D" 163: 5-9)

Village Clerk Arsa Artha had numerous complaints about Plaintiff's job performance. According to Village Clerk Arsa Artha, Plaintiff had difficulty following directions, improperly sending uncertified death certificates to the state despite being trained on how to handle death certificates and given instructions on how to prepare death certificates, improperly entering tax payments, improperly handling building department paperwork that led to violations cases being

1

improperly dismissed, had issues entering information into the building department computers, among other issues. (Ex "H"). Village Clerk Arsa Artha also complained that Plaintiff routinely mocked her, talked openly about an anger management issue that Plaintiff had which included descriptions of violence perpetrated by Plaintiff, threatened Trustee Klein with violence, and verbally accosted Klein when encountering him in public (Ex "H"). Specifically, Plaintiff admits to mocking Village Clerk Arsa Artha calling her "Cold Heart Hannah" (Ex "C" 80: 2-4).

The Plaintiff's other direct supervisor Building Inspector Zummo also had numerous complaints about Plaintiff's job performance, Specifically, Building Inspector Zummo complained to Mayor Yagel about Plaintiff being hostile and doing a poor job (Ex "F" 76: line 24 – 77: 7). Plaintiff engaged in a screaming match with Mayor Yagel in front of Building Inspector Zummo over her handling of a call, Mayor Yagel overheard Plaintiff telling a resident that they can get their building inspected on the same day they called in, Mayor Yagel told Plaintiff that they don't work that way, Plaintiff proceeded to put the phone down and began screaming at Mayor Yagel telling him that he did not have the right to tell her what to do and that she would do things the way she wanted. (Ex "F" 82: 22 – 84:19). Building Inspector Zummo complained to Mayor Yagel about Plaintiff's computer entries at least 2-3x a month (Ex F" 106: 19-24). Plaintiff issued permits without Building Inspector Zummo signing and authorizing them despite not having the authority to do so (Ex "F" 108: 22-24).

Beyond the complaints of Plaintiff's two direct supervisors, Mayor Yagel also had his own complaints about Plaintiff's job performance. Specifically Mayor Yagel complained about Plaintiff introducing a defective app without authority while working for the village. She implemented the app from the sanitation department without making sure the app was properly vetted and without authority. The app was defective and contained incorrect information (Ex "D" 145: 8-25). Mayor Yagel had to speak to Plaintiff about her handling of foil requests because she

2

was doing so improperly, Plaintiff was rushing to respond to foil requests and would either give wrong information or not properly checking to make sure she was giving the correct information (Ex "D" 199: 8-25 through 202: 12). Moreover he received numerous complaints about Plaintiff's job performance from Plaintiff's direct supervisors. Building Inspector Zummo complained about Plaintiff's job performance to Mayor Yagel (Ex "D" 211: 6-16). Building Inspector Zummo complained specifically that Plaintiff was setting up his calendar without discussing it with him first and making promises on his behalf to residents.  (Ex "D" 212: 8-25).  Village Clerk Arsa Artha gave a list of things Plaintiff did wrong on the job to Mayor Yagel that Plaintiff admitted to. (Ex "D" 218: 3-9).   These things included Plaintiff not following instructions given to her by Village Clerk Arsa Artha on how to handle a death certificate properly leading to two death certificates being prepared poorly and then submitted to the state with the mistakes in said letters (Ex D 218:10 – 220:16).  Plaintiff mishandled death certificates leading to Mayor Yagel deciding to not renew her (Ex "D" 219: 2-25, 220: 2-25.  Mayor Yagel started looking for a replacement for Plaintiff in February of 2017 because he was upset with Plaintiff's anger management issues (Ex "E" 34: 13-25).   Plaintiff was not reappointed to her position in June of 2017.

Plaintiff never heard Mayor Yagel instruct her not to set up an inspection for someone because they were Jewish.  (Ex "C" 54: 15-24).  Plaintiff claims she knew Mayor Yagel was antisemitic from his "tone" (Ex "C" 54: 25, 55: 2-20.  99% of the people who came to Plaintiff's counter were Orthodox Jews (Ex "C" 56: 5-6).  When asked about antisemitic comments made, Plaintiff claims Mayor Yagel made a joke about buying pork rinds once, Plaintiff was not directed to buy pork rinds, and no one took the joke seriously. (Ex "C" 56: 7-19). Building Inspector Zummo denies calling Plaintiff a "Jew lover" (Ex "F" 72: 2-8). Building Inspector Zummo never heard Mayor Yagel use the term "Jew lover" (Ex "E" 72: 23-25).  Building Inspector Zummo told the human rights department investigator in the instant matter that he did not recall the mayor ever

making a remark about pork rinds. Exhibit "F". Mayor Yagel told Plaintiff the reason he was not reappointing her is because "he is the mayor" (Ex" C" 110: 12-16). It was Building Inspector Zummo, not Mayor Yagel who called Plaintiff a "Jew lover". (Ex "C" 110: 12-17; Ex "D" 191: 9-13). When Plaintiff complained to the board of trustees about her employment, she did not mention antisemitism, rather she used the letter to complain about Village Clerk Arsa Artha allegedly not training her properly, her poor relationship with Village Clerk Arsa Artha, and claimed that Village Clerk Arsa Artha vowed to make sure (Plaintiff) was not reappointed. Nowhere in the letter did Plaintiff mention anything about the treatment of Jewish people being treated differently or about Plaintiff herself being treated any differently because of the way she interacted with Jewish people. Plaintiff also failed to mention any antisemitic comments made by anyone in the Village (Ex "C' 153: 7-25, "Ex "G"). Plaintiff complained to Mayor Yagel about Village Clerk Arsa Artha and Building Inspector Zummo regarding job related issues (Ex "D" 116: 13-25, 117: 2-9). Plaintiff did not complain about an antisemitic atmosphere (Ex "D" 118: 9-12).

## ARGUMENT

**I. PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS THE DECISION TO NOT REAPPOINT THE PLAINTIFF TO HER POSITION DUE TO LEGITIMATE BUSINESS REASONS RELATING TO HER JOB PERFORMANCE AND PLAINTIFF FAILS TO ESTABLISH THAT THE REASONS PROVIDED WERE A MERE PRETEXT TO DISCRIMINATION.**

The Plaintiff alleges that the Defendants violated her Equal Protection clause rights of the 14th Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983 "because such acts were taken in accordance with Defendants' custom or practice of discriminating and/or selectively treating individuals. These practices were so persistent and widespread that they constitute constructive acquiescence of the policymakers in violation of 42 U.S.C. § 1983."

"To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, (2) by a person acting

under the color of state law." *Carter v. County of Suffolk*, 2013 WL 6224283, * 3 (E.D.N.Y. 2013) (Bianco, J.).

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. "[T]he burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo, 22 F.3d at 1223-24 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. All ambiguities must be resolved, and all inferences drawn in favor of the party against whom summary judgment is sought. Id. at 249.

In the summary judgment context, claims brought under Title VII for employment discrimination are analyzed under the three-step burden shifting analysis the Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. Id. at 802-03. The employer does not need to prove by a preponderance of the evidence that the rationale was not discriminatory but must present a clear explanation for the action. *Gibbs v. Consol. Edison Co. of N.Y., Inc*., 714 F. Supp. 85, 89 (S.D.N.Y. 1989). The burden then shifts to the plaintiff to put

forth evidence demonstrating the existence of a genuine issue of material fact as to whether the employer's stated reasons are a pretext for prohibited discrimination. *McDonnell Douglas*, 411 U.S. at 804. "[T]o defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Stern v. Trs. of Columbia Univ. in City of N.Y.*, 131 F.3d 305, 312 (2d Cir. 1997).

Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, (2d Cir. 2001). The "non-moving party may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Girma v. Skidmore College, 180 F. Supp. 2d 326, 334, 2001 U.S. Dist. LEXIS 18191. The opposing party must provide admissible evidence and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993). Moreover, the non-movant must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). She must "offer concrete evidence from which a reasonable juror could return a verdict in [her] favor." *Liberty Lobby*, 477 U.S. at 256.

It is well-established that summary judgment is equally available and appropriate in employment discrimination cases. *Abdu-Brisson v. Delta Air Lines,* 239 F.3d 456, 466 (2d Cir.), cert. denied, 534 U.S. 993 (2001). As the Second Circuit has made "abundantly clear," "in a case where a plaintiff does not credibly call into question an employer's non-discriminatory explanation for its motives, summary judgment for the defendant continues to be appropriate." *Ellenbogen v.*

*Projection Video Svcs., Inc*., 2001 U.S. Dist. LEXIS 8852, *17 (S.D.N.Y. June 29, 2001) (citing *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000)).

The Supreme Court has stated that "trial courts should not 'treat discrimination differently from other ultimate questions of fact.'" *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 148, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y*., 352 F.3d 733, 743 (2d Cir. 2003), *Campbell v. Home Depot U.S.A., Inc*., 2006 U.S. Dist. LEXIS 14958, *7-8, 2006 WL 839001.

**A.   THE VILLAGE HAD LEGITIMATE NON-DISCRIMINATORY REASONS FOR NOT REAPPOINTING PLAINTIFF TO THE DEPUTY VILLAGE CLERK POSITION**

It is important to note that Plaintiff was not guaranteed employment past April of 2017. Plaintiff was appointed to a one-year term as deputy clerk with no guarantees of employment past that point.  Mayor Yagel decided not to reappoint Plaintiff to her position due not only to his complaints regarding the Plaintiff's job performance but also because of the complaints of both of the Plaintiff's direct supervisors. Plaintiff had difficulty following directions, improperly sending uncertified death certificates to the state despite being trained on how to handle death certificates and given instructions on how to prepare death certificates, improperly entering tax payments, improperly handling building department paperwork that led to violations cases being improperly dismissed, had issues entering information into the building department computers, among other issues.  Village Clerk Arsa Artha also complained that Plaintiff routinely mocked her, talked openly about an anger management issue that Plaintiff had which included descriptions of violence perpetrated by Plaintiff, threatened Trustee Klein with violence, and verbally accosted Klein when

7

encountering him in public  Plaintiff openly mocked her superior Village Clerk Arsa Artha calling her "Hannah Raincloud" and would routinely get angry at people when being told what to do.

Plaintiff mishandled death certificates sending out defective death certificates to the state despite being trained on how to properly handle death certificates.  Plaintiff improperly entered information into the building department's computer system then tried to blame Village Clerk Arsa Artha for her shortcomings when Village Clerk Arsa Artha did not have access to the building department's computer system.  Both Zummo and Arsa Artha complained about Plaintiff and asked for her to be removed.  Louis Zummo witnessed Plaintiff lose her temper with Yagel, engage in a screaming match in the open with Yagel and tell Yagel that she will do things how she sees fit.  Building Inspector Zummo complained to Mayor Yagel about Plaintiff's computer entries at least 2-3x a month.  Plaintiff issued permits without Building Inspector Zummo signing and authorizing them despite not having the authority to do so

All the aforementioned constitutes good nondiscriminatory reasons to terminate Plaintiff which had nothing to do with any perceived biases against her.  Plaintiff will undoubtedly claim that the complaints that her two direct supervisors leveled at her were unwarranted and she was a good worker.  However, Mayor Yagel is entitled to rely on the opinions of the Plaintiff's two direct supervisors as well as his own opinions of Plaintiff's job performance on whether to reappoint Plaintiff to her position.

**B. PLAINTIFF'S ALLEGED PROOF OF DISCRIMINATION CONSISTS ENTIRELY OF RANK SPECULATION AND INADMISSIBLE HEARSAY AND IS INSUFFICIENT TO ESTABLISH AS A MATTER OF LAW THAT THE REASONS GIVEN FOR NOT REAPPOINTING HER TO HER POSITION WERE A MERE PRETEXT FOR DISCRIMINATION**

In the instant matter Plaintiff claims that she was discriminated against and ultimately terminated for being supportive of Jewish residents.  However, Plaintiff cannot point to any specific evidence that she was treated any differently due to her treatment of Jewish people.  A

review of the testimony shows that these allegations are merely speculative in nature without any concrete examples of discrimination.  As stated *supra*, Plaintiff could not point to one instance where Mayor Yagel set up a policy or procedure designed to specifically target Jewish people. Rather Plaintiff speculates that the Village was antisemitic saying she could "feel" the antisemitism.  She also made claims that Yagel had an antisemitic "tone".  Plaintiff's assumptions of discrimination do not establish sufficient grounds to defeat summary judgment. *Wado v. Xerox Corp.*, 991 F.Supp. 174, 203 (W.D.N.Y. 1998) ("Feelings [of discrimination] are not evidence.") aff'd, 196 F.3d 358 (2d Cir. 1999)  *Little v. Republic Refining Co.*, 924 F.2d 95, 96 (5th Cir. 1991) (subjective belief of discrimination cannot be the basis for judicial relief);

 When asked about village policies that she believed to be antisemitic, Plaintiff could only guess that the intent of these policies was antisemitic.  Nor did Plaintiff complain about any issues involving anti-Semitism when she was employed by the village.  She instead wrote a letter where she complained about Frances Arsa Artha and her training (Exhibit "G")..  It wasn't until after the Plaintiff was not reappointed to her position that she first verbalized the idea that she was treated differently for supporting Jewish people.

 Plaintiff cannot point to any way that she treated Jewish people well or that non Jewish people were treated more poorly than anyone else.  By her own admission, 99% of the residents who came in to get help at the building department were Jewish (Ex "C" 56: 5-6).  Therefore, there is no merit to Plaintiff's contention that Jewish permit applicants were treated differently from any other applicants as Plaintiff has no comparators on which to base this allegation.

 Similarly, Plaintiff's allegation that Mayor Yagel purportedly made a joke about putting pork rinds out in the candy dish in village hall is clearly insufficient to establish that the reasons provided for not reappointing her to her position were pretextual.  Initially, it should be noted that none of the other deponents in the instant matter heard Mayor Yagel make this remark, and Yagel

9

himself denies making this remark.  Similarly, no one requested or ordered Plaintiff or anyone else to buy pork rinds or put pork rinds out for guests, and no one actually bought pork rinds or put them out for distribution.  Even assuming Plaintiff could prove that Mayor Yagel made a remark about pork rinds, it does not rise to the level of establishing Plaintiff's case.  The Second Circuit has held that "stray remarks" of a decision maker, without a more definite connection to the employment decision, are insufficient to prove a claim of employment discrimination. See *Woroski v. Nashua Corp.*, 31 F.3d 105, 109-110 (2d Cir. 1994).

Plaintiff's allegation that Mayor Yagel called her a "Jew Lover" is clearly inadmissible hearsay which should not be considered in this motion.  Specifically, Plaintiff claims that Building Inspector Zummo told her the mayor called her a "Jew lover" (Ex "C" 110: 12-17; Ex "D" 191: 9-13).  Plaintiff at no time testifies that she heard Mayor Yagel directly refer to her as a "Jew Lover." Instead she claims that Building Inspector Zummo relayed this remark to her and attributed it to Yagel.  It should be noted that Building Inspector Zummo adamantly denied that Mayor Yagel called Plaintiff a "Jew lover."  However, even if he had not, the purported statement constitutes inadmissible hearsay not subject to any exception in Federal Rules of Evidence 803 and 804. *Burlington Coat Factory Warehouse Corp. v. Espirit de Corp.*, 769 F.2d 919, 924 (2d. Cir. 1985) (observing that a plaintiff "cannot rely on inadmissible hearsay in opposing a motion for summary judgment").  Moreover, even if the comment was said and was admissible, it is insufficient standing on its own to establish that the reasons established for not reappointing Plaintiff were not pretextual.

Finally, Plaintiff claims that Building Inspector Zummo impersonated Jewish residents. However, Building Inspector Zummo testified that he impersonated everyone regardless of religion including Plaintiff, Yagel, and Village Clerk Arsa Artha, none of whom are Jewish.  In

any event, Building Inspector Zummo was not a final decision maker of the Village and thus the Village cannot be held liable for Building Inspector Zummo's stray comments.

Therefore, because the Plaintiff's evidence of purported discrimination consists entirely of speculation, and inadmissible hearsay, the Village is entitled to Summary Judgment as a matter of law.

## CONCLUSION

Wherefore, considering the foregoing, it is respectfully submitted that the Village is entitled to summary judgment pursuant to Fed. R. Civ. P. 56.

Dated: May 8, 2020
New York, New York

>Respectfully submitted,
>
>**MORRIS DUFFY ALONSO & FALEY**
>
>By:   /s/ Kenneth E. Pitcoff
>         KENNETH E. PITCOFF
>         JONATHAN A. TAND
>         *Attorneys for Defendants*
>         Office and Post Office Address
>         101 Greenwich Street, 22nd Floor
>         New York, New York 1006
>         Telephone: (212) 766-1888
>         Fax:  (212) 766-3252
>         Our File No.: (TRV) 7086

TO:   **VIA ECF**
        **SUSSMAN & ASSOCIATES**
        *Attorneys for Plaintiff*
        NOREEN SHEA
        PO Box 1005
        1 Railroad Avenue, Suite 3
        Goshen, New York 10924
        (845) 294-2991

**JACKSON LEWIS**
*Attorneys for Brett Yagel*
44 South Broadway
14th Floor
White Plains, NY 10601