UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
NOREEN SHEA,                                       18 cv 11170 (CS)

      Plaintiff,

vs.

VILLAGE OF POMONA, BRETT YAGEL,

      Defendants.
----------------------------------------------------------------x

# PLAINTIFF'S RESPONSE TO DEFENDANT VILLAGE OF POMONA'S RULE 56.1 STATEMENT

1. This Court has jurisdiction over this Action pursuant to 28 U.S.C §§ 1331 and 1343 as it arises under the Constitution and laws of the United States. See, Exhibit A, a copy of the Complaint. See, Exhibit B, a copy of the Defendants' Answer.

**Admit.**

2. Plaintiff was hired by Defendants Village of Pomona in 2016 as a deputy village clerk. Exh "C" p15 lines 10-18.

**Admit. Plaintiff commenced employment for the Village on February 1, 2016.**

3. The person who hired Plaintiff was Defendant Brett Yagel. Exh "C" p16 lines 2-

**Deny. Yagel recommended her hire to the Village Board which approved her hiring.**

4. Plaintiff was initially filling out the term of Carol LaChianna and was eventually appointed to her own term. Exh "C" p32 lines 15-25, P 33 lines 2-19.

**Admit.**

5. Plaintiff never heard Mayor Yagel instruct her not to set up an inspection for someone because they were Jewish. Exh. "C" p 54 lines 15-24.

**Deny. While Plaintiff stated that Defendant Yagel never said these exact words, she has stated that he directed her to delay and push back**

1

inspections for Jewish residents. She understood these directions to be based on the resident's religion as no other reason was provided for the direction and there was a tone of anti-Semitism in the office. (Shea Deposition at 54 l. 15- 55 l. 20)(SHEA RECORDING February 14, 2017 Part 2: 38 minutes).

6. Plaintiff claims she knew Mayor Yagel was antisemitic from his "tone" Exh "C" page 54 line 25, Page 55 lines 2-20.

**Admit and note that Plaintiff has also cited Defendant Yagel's comments, impersonations, and directions to his staff as evidence of his anti-Semitism and his acceptance of the comments and actions of his subordinate Louis Zummo who expressed such views in his presence. (Shea Deposition at 55, l. 21-58 l. 5, 60 ll. 22-25, 61 ll. 1-18)**

7. 99% of the people who came to Plaintiff's counter were Orthodox Jews. Exh "C" page 56 lines 5-6.

**Admit.**

8. When asked about antisemitic comments made, Plaintiff claims Mayor Yagel made a joke about buying pork rinds once. Exh "C" page 56 lines 7-19.

**Deny; Yagel made this comment in plaintiff's presence but she did not regard it as a joke. (SHEA Deposition at 56, ll. 13-16).**

9. Plaintiff admits to mocking Frances Arsa Artha calling her "Cold Heart Hannah" Exh "C" page 80 lines 2-4.

**Deny as stated; plaintiff used this term "cold hearted Hannah" because Arsa Artha treated her in an unrelentingly cruel manner and played along with the bigotry in the office. See Shea Affidavit, para. 2.**

10. Mayor Yagel told Plaintiff the reason he was terminating her is because "he is the mayor" Exh"C" page 110 lines 12-16.

**Deny that this is a reason; when asked why he was terminating he did not give her a reason, only cited his authority to do so. Shea Deposition at 110.**

11. It was Louis Zummo, not Mayor Yagel who called Plaintiff a "jew lover". Exh "C" page 110 lines 12-17 Exhibit D page 191 lines 9-13.

**Deny. While Plaintiff stated that she never directly heard Defendant Yagel refer to her as a "Jew lover," one of her two supervisors, Zummo, told her repeatedly that Defendant Yagel referred to her in this manner. Shea Deposition at 115, ll. 5-7, 116 ll. 3-15).**

2

12. When Plaintiff complained to the board of trustees about her employment, she did not mention antisemitism. Exhibit "C' Page 153 lines 7-25.

**Deny; Plaintiff complained of anti-semitism to Village Trustee Wilson and Village Trustee Ian Banks. (Shea Deposition at 226-229).**

13. Plaintiff complained about Fran Arsa Artha and Louis Zummo about job related issues. Exhibit "D" page 116 lines 13-25 page 117 lines 2-9.

**Admit.**

14. Plaintiff did not complain about an antisemitic atmosphere. Exhibit "D" page 118 lines 9-12.

**Deny. Plaintiff complained to the village attorney of the antisemitic atmosphere (Shea Deposition at 149 ll. 19-25) and she complained to Trustees Wilson and Banks and village attorney, Doris Ullman, and Planning Board member Jerry Fox. (Shea Deposition at 149-50, 222-31).**

15. Plaintiff rolled out a defective app without authority while working for the village Exhibit "D" page 145 lines 8-25.

**Deny. In July 2016, while Artha was on vacation, an employee of the Rockland County Solid Waste Authority contacted plaintiff and advised that this agency wished to provide village residents with virtual access to information concerning their garbage pick-up. The Authority then rolled out an application which allowed village residents access to this information. Learning of this, defendant Yagel claimed that the information on the application was "garbage" and directed Artha to contacted the Authority and give them the correct information on garbage pick-up times. He wrote, "They missed the boat on this one. The fact that they rolled this out without us being able to verify the information is extremely problematic. I will be in contact with the County Executive on this matter." See Shea Affidavit, para. 3, Exhibit 1to Shea Affidavit.**

16. In April of 2016, Plaintiff was appointed to a one year term as Deputy Clerk that came due in April 17, 2017. Exhibit "D" Page 163 lines 5-9.

**Admit.**

17. Mayor Yagel had to speak to Plaintiff about her handling of foil requests because she was doing so improperly. Exhibit "D" page 199 lines 8-25 through Page 202 line 12.

Deny. Defendant Yagel cites to testimony concerning a specific incident which, he assumed, happened during the summer 2016, almost a year before plaintiff was terminated. Yagel Deposition at 200, ll. 6-13. He stated that he spoke with Plaintiff about completing a FOIL request in which she responded to a customer at the counter, made them a copy of the requested information, collected 25 cents, and sent them on their way.. Defendant Yagel claims to have complained because plaintiff did not search "all the files" before responding to the request. But he did not know what this request was for and has never seen this request. Therefore, he could not judge whether Plaintiff's response to the request was proper or improper. In this instance, plaintiff fully responded to a specific and limited request. See Shea Affidavit, para. 4. Plaintiff completed complex FOIL requests and obtained approval from either Arsa Artha, Zummo or Defendant Yagel. (Yagel Deposition at 199 ll. 7-25, 202, ll. 16-203, l. 2; Shea Deposition at 62, l. 65, l.3; 66, ll. 10-19.

18. Louis Zummo complained about Plaintiff's job performance to Mayor Yagel Exhibit "D" page 211 lines 6-16.

To the extent this is offered for its truth, it is inadmissible hearsay. To the extent it is offered to explain Yagel's decision to terminate plaintiff in May 2017, Yagel could recall no request by Zummo that he terminate plaintiff's employment. See Yagel Deposition at 210, ll. 14-24. Yagel testified that in June or July 2016, Zummo told him that plaintiff was scheduling appointments for him, a part-time Building Inspector, when he was not at work, not knowing how long he would require to complete an inspection. Yagel Deposition at 211, l. 25-212, l. 25. Yagel claims that after receiving this complaint from Zummo, he spoke with plaintiff and told her that she needed to speak with Zummo before making appointments for him. Id. at 213, ll. 8-22. Plaintiff responded that when she made these appointments, Zummo was not present and had not responded to her effort to get his advice on scheduling. Id. at 214, ll. 4-8. She explained that the residents needed to get inspections completed. After this conversation which he believes occurred in 2016, Yagel could not recall further discussion with Zummo about this issue. Id. at 217. In his deposition, Zummo stated that shortly after plaintiff commenced, he told her how much time he would need to do various kinds of inspections. She was in charge of scheduling his appointments with building owners and contractors and claims that he directed her to set up appointments as soon as possible because that he knew the inspections were require before they could proceed. He did not complain to the Mayor about how plaintiff handled his scheduling. He claims to have frequently complained to the Mayor about entries Shea made in the computer relating to the substance of permits issued by the Village, a matter the Mayor does not reference in relating his conversations with Zummo regarding Shea.

4

19. Zummo complained specifically that Plaintiff was setting up his calendar without discussing it with him first and making promises on his behalf to residents. Exhibit "D" page 212 lines 8-25.

**To the extent this is offered for the truth, it is inadmissible hearsay; to the extent it relates to Yagel's motives, admit that he so testified. Louis Zummo did not cite this as an issue when questioned at his deposition concerning any problems with Shea and instead testified that Defendant Yagel's actions made his scheduling difficult and unpredictable (Shea Deposition Page 47 ll. 5-20).**

20. Fran Arsa Artha gave a list of things Plaintiff did wrong on the job to Mayor Yagel. Exhibit "D" page 218 lines 3-9.

**Deny. Defendant Yagel stated that Fran Arsa Artha gave him a list of instructions that she had previously created for and given to the Plaintiff for the time that she would be out on vacation. (Yagel Deposition at 217 ll. 21-218, l. 5). Additionally, it is in dispute whether Fran Arsa Artha gave Plaintiff this list of instructions before or after her vacation (Shea Deposition at 142, ll. 6-7; 144 Lines 4-10).**

21. Plaintiff mishandled death certificates leading to Mayor Yagel deciding to not renew her Exhibit "D" page 219 lines 2-25 Page 220 lines 2-25.

**Deny. In June-July 2016, almost a year before her termination, plaintiff entered an incorrect date on a cover letter accompanying a death certificate, but did not mishandle the actual death certificate. Yagel Transcript at 220, ll. 17-20. Plaintiff was not trained to handle death certificates before two village residents due while Village Clerk Artha was on vacation. Artha had not provided plaintiff any training or instructions for how to complete death certificates until after her return from vacation (Shea Deposition at 74, ll. 11-15; 76 l. 9-78, l.16; 142, ll. 6-7; 144, ll. 4-10).**

22. Mayor Yagel started looking for a replacement for Plaintiff in February of 2017 because he was upset with her anger management issues. Exhibit "E" Page 34 lines 13-25.

**Deny. Defendant relies on hearsay testimony from Artha [Exhibit E page 34, lines 13-25] for the claim that Yagel commenced looking for a replacement in February 2017 because of anger management issues. However, defendant Yagel himself testified that he appointed Plaintiff in February of 2016, reappointed her in April of 2016, and decided that he no longer wanted her to work for the Village in July or August of 2016. He further stated that he began to reach out to mayors in search of a replacement for Plaintiff in July or August of 2016. Defendant Yagel**

5

made no comment on Plaintiff's alleged anger issues during any part of his testimony. (Yagel Deposition at 220, l.21-222, l.10).

23. Fran Arsa Artha admonished Plaintiff for her job performance. Exhibit "E" Page 72 lines 7-10.

**Admit. Artha claims that plaintiff wrote and signed a letter which contained errors and signed her [Artha's] name. This occurred in January 2017. She conversed with plaintiff alone about this and never discussed the matter with the Mayor. Exhibit E page 73, l. 24-74, l. 8. On another occasion, Artha claims that plaintiff was misinformed as to whether a motor vehicle fatality occurred within the jurisdiction of the Village. She told plaintiff that the person did not die in the Village. She did not know when this event occurred or when she spoke with plaintiff about it. The Mayor was not present and Artha could not recall speaking with him about the matter. Artha Deposition at 75-77.**

24. Plaintiff got angry when being told to follow protocol. Exhibit "E" Pages 129 lines 2-25 through Page 130 lines 2-8.

**Deny. The reference in the transcript is to an incident which allegedly occurred about one year before plaintiff was terminated and before Artha went on her two week vacation in June-July 2016. Artha Deposition at 127. Artha claims that she told Shea that a specific check had to be signed by either the Mayor or Deputy Mayor. Artha placed the check in the deputy mayor's mailbox and plaintiff wanted the check to remain on her own desk, Artha expressed concern that if left on plaintiff's desk, the check might get lost. She claims it was then village protocol to keep the unsigned check in the mailbox. Artha claims that Shea became very angry and mocking and dismissed this protocol. Artha told Shea that she was acting like an asshole. Artha denied reporting this incident to the Mayor. Artha Deposition at 127-130. Plaintiff denied that this incident ever happened, Shea Affidavit, para. 5, and states that upon returning from her vacation, Artha apologized to her for her unprofessional behavior before she had left. Id.**

25. Plaintiff had an anger management issue. Exhibit "E" Page 130 lines 9-14 Exhibit "F" page 78 lines 6-10.

**Deny. Plaintiff had no such issue and this was never discussed with her by anyone. Shea Affidavit, para. 6.**

26. Zummo did not report his daily activities to Yagel, and Yagel did not ask him about his daily activities. Exhibit "F" Page 43 lines 3-8.

6

**Deny that Zummo did not report his daily activities to Defendant Yagel. Zummo told plaintiff that Yagel wanted to know every detail of his activities, particularly with regard to any Jewish developers and their properties. Yagel constantly interfered with Zummo's schedule, directed plaintiff and Zummo to alter that schedule to delay scheduled inspections of properties owned by Jews, directed Zummo to find violations of properties of Jewish developers, directed Zummo to engage in what was called a "shul patrol" on the Sabbath during which Zummo went to religious sites and wrote violations and otherwise controlled Zummo's activities. Shea Affidavit, para. 7, Zummo Deposition at 125-128.**

27. Yagel told Zummo it was inappropriate to mimic people. Exhibit "F" page 66 line 23 through page 67 line 18.

**Deny; in his deposition, Zummo was asked specifically whether he ever mimicked Jews. He lied when he denied doing this and claimed not to know what the question ever meant. Zummo Deposition at 66-70. See Exhibits to Sussman Affirmation for examples of such mimicking and see Shea at para. 8. Shea never heard Yagel correct or chastise Zummo for mimicking Jews in his presence. Id. Yagel claims to have witnessed Zummo impersonating Jews on several occasions. Yagel Deposition at 74-75. He claims that he told Zummo to knock it off once, but took no disciplinary action against Zummo on this occasion or after observing several further instances of the same behavior. Id. In explaining why he took no such action, he stated, "because he was still doing his job." Id.**

28. Zummo denies calling Plaintiff a "Jew lover" Exhibit "F" Page 72 lines 2-8.

**Admit that he denies this, but Defendant Yagel claims that Zummo admitted that he, Zummo, called plaintiff a "Jew lover". Yagel Transcript at 191. Yagel did not query his subordinate as to how many times he made this statement to plaintiff or why he so stated. Id.**

29. Zummo never heard Yagel use the term "Jew lover" Exhibit "F" Page 72 lines 23-

**Deny. While she was still employed with the Village, Zummo told plaintiff that Defendant Yagel referred to her as a "Jew lover" (Shea Deposition at 115, ll. 5-7; 116 ll. 3-15). Yagel claims that he learned that Zummo had so stated to plaintiff for the first time when he reviewed the transcript of the Human Rights Commission proceeding. Asked whether he then queried his subordinate as to whether Zummo made this comment to plaintiff, Yagel could not recall. Yagel Deposition at 184; 187, ll. 16-191, l. 21.**

30. Zummo told the human rights department investigator in the instant matter that he did not recall the mayor ever making a remark about pork rinds. Exhibit "F".

**Admit that Zummo claims that he did not hear the comment, but note that he was a part-time employee and that Shea did not testify that Zummo was present when this comment was made. Shea Deposition at 56-59. On the day this comment was made, Zummo was not at work. Shea Affidavit, para. 9.**

31. Zummo complained to Yagel about Plaintiff being hostile and doing a poor job. Exhibit "F" Page 76 line 24 through Page 77 line 7.

**Deny. Zummo claims that in the spring 2016, he told Yagel that he wanted him to get rid of Shea. Zummo claims Yagel told him to work through his issues with Shea. Zummo Deposition at 76-77. As noted above, defendant Yagel recalls no request by Zummo that he terminate plaintiff's employment. Yagel Deposition at 210, ll. 14-24. Shea denies that Yagel ever suggested to her that she was on thin ice or that he or Zummo had any serious issues with her job performance. Nor did Zummo make any such comments to her. Shea Affidavit, para. 10. In terminating plaintiff, Yagel provided no reason for his action and certainly cited no job-related performance matter. Shea Deposition at 110.**

32. Plaintiff engaged in a screaming match with Yagel in front of Zummo over her handling of a call. Exhibit "F" Page 82 line 22 through Page 84 line 19.

**Admit that the Mayor sought to interrupt plaintiff while she was on a call regarding Village business.** This incident occurred in the fall 2016 as follows: defendant Yagel was standing at the counter talking to Lou Zummo, and Fran was also in the office next to me. Plaintiff answered the village phone and **again** it was Mr. Sunshine (an Orthodox Attorney), a village resident. He had called the previous day because he kept getting water in his basement. He reported that two plumbers had come to his home and reported that there was nothing wrong with anything in his home. The sewer company had been outside for the last few days on his street doing maintenance. Plaintiff asked him to hold on and wanted Lou to talk to him. The mayor stated he should flush the toilet a few times that should make the brown water go away. Plaintiff told the mayor he called yesterday and today, and he was on his third plumber. When Plaintiff got back on the phone with Mr. Sunshine, Yagel started waving his hands at her, trying to get me to put her on hold again; he was punching the counter and turning red, making the hand gestures to hang up, or put on hold, but Mr. Sunshine was explaining to plaintiff what all three plumbers did, and she did not want

8

to interrupt him. The Mayor was pounding his fist and became infuriated, turning beet red, so plaintiff interrupted Mr. Sunshine, put the call on hold, and yelled at the mayor, " What the hell is your problem"........he yelled back 'HE IS AN ATTORNEY." Plaintiff yelled back at him that she needed to finish my conversation and assist the man on the phone. The Mayor never discussed this incident with plaintiff again. See Shea Affidavit, para. 11.

33. Zummo complained to Yagel about Plaintiff's computer entries at least 2-3x a month. Exhibit "F" page 106 lines 19-24.

**Deny. Yagel makes no mention of any such complaints and no one ever spoke with plaintiff about this issue. See, Shea Affidavit at para. 12.**

34. Plaintiff issued permits without Zummo signing and authorizing them. Exhibit "F" Page 108 lines 22-24.

**Deny. Plaintiff presented building permits to Zummo who had the authority and responsibility to approve or deny permits (Shea Deposition at 44, ll. 4-5; 113 ll. 23-25; 114, ll. 2-3).**

Plaintiff submits a single counterstatement which follows her response to defendant Yagel's Statement of Undisputed Facts and is incorporated in full herein as well.

Respectfully submitted,

Michael H. Sussman [3497]

Sussman & Associates
PO Box 1005
Goshen, NY 10924
(845)-294-3991
Counsel for Plaintiff Shea

**Dated June 10, 2020**